UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

―――――――――――――

№ 06-CV-6497 (JFB) (ARL)

―――――――――――――

PHILIP BARASH,

Plaintiff,

VERSUS

FORD MOTOR CREDIT CORPORATION, DELL COMPUTER CORPORATION, EXPERIAN
AND TRANS UNION,

Defendants.

―――――――――――――

MEMORANDUM AND ORDER
June 20, 2007

―――――――――――――

JOSEPH F. BIANCO, District Judge:

On November 3, 2006, *pro se* plaintiff Philip Barash ("Mr. Barash") commenced a civil action in the Supreme Court of the State of New York, Nassau County against defendants Ford Motor Credit Corporation ("Ford"), Dell Inc.[1] ("Dell"), Experian Information Solutions, Inc.[2] ("Experian") and Trans Union LLC[3] ("TransUnion") (collectively, "defendants") pursuant to the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law §§ 380-380-u (hereinafter, "the NYFCRA"), and New York Personal Property Law §§ 302, 401-403, 405. On December 6, 2006, defendant Experian filed a notice of removal to remove this action to federal district court for the Eastern District of New York. Defendants Ford, Dell and TransUnion join in Experian's notice of removal.

Plaintiff now moves to remand the action to state court, for sanctions against counsel for Experian pursuant to Federal Rule of Civil Procedure 11, and for attorney's fees. For the reasons that follow, plaintiff's motions are denied.

―――――――――――――

[1] Incorrectly pleaded as "Dell Computer Corporation." (Dell/Experian/TransUnion Brief ("hereinafter "Dell Br.")., at 1.)

[2] Incorrectly pleaded as "Experian." (Dell Br., at 1.)

[3] Incorrectly pleaded as "Trans Union." (Dell Br., at 1-2.)

I. BACKGROUND

A. The Complaint

The following facts are taken from the amended complaint and are not findings of fact by the Court.

1. The Ford Loan

On June 23, 2003, an individual purchased a 2003 Lincoln Navigator vehicle ("the vehicle") from Margate Lincoln Mercury ("Margate"), a car dealer located in Broward County, Florida. (Compl. Exs. 2, 8.) A car loan for the vehicle was obtained from Ford in the amount of $59,419. (*Id.*) The loan was to be paid in installments. (Compl. Exs. 1, 2.) The retail installment contract for the vehicle, which listed Philip Barash as the borrower, was signed in Massachusetts. (Compl. Ex. 1.) According to plaintiff, he did not sign the installment contract.[4] (*Id.*) Plaintiff avers that "[Ford] paid [Margate] for the vehicle without proper contact with Philip Barash a citizen of New York." (Compl. Ex. 2.) Mr. Barash claims that he "did not execute any vehicle retail installment contract with Margate Lincoln Mercury, has never been to Margate Lincoln Mercury, and never took possession of any Lincoln Motor Car from Margate Lincoln Mercury." (Compl. Ex. 2.)

On July 16, 2003, a certificate of title to the vehicle was filed in Florida. (Compl. Ex. 8.) The title was made out in plaintiff's name, with a Florida address, and identified Ford as the sole lienholder on the vehicle. (Compl. Ex. 8.) Mr. Barash asserts that he "did not execute, cause to execute nor authorize anyone to file with the State of Florida for a Certificate of Title for a Lincoln Navigator in his name." (Compl. Ex. 2.)

According to Mr. Barash, the vehicle "had been tendered to Jonathan Barash," who made nineteen (19) installment payments on the vehicle to Ford.[5] (*Id.*) Ford accepted the payments from Jonathan Barash. (*Id.*) Mr. Barash asserts that, "[w]hen Jonathan Barash could not [sic] longer afford to make payments he voluntarily returned the vehicle to [Ford]."[6] (*Id.*) The vehicle was returned on May 20, 2005, when Jonathan Barash brought it back to Margate. (*Id.*)

On May 26, 2005, six days after the vehicle was returned to Margate, Ford filed a complaint against Mr. Barash in the Circuit Court of the Seventeenth Judicial Circuit, Broward County, Florida. On April 18, 2006, Mr. Barash moved to dismiss the complaint on grounds that venue was improper in Florida state court, since Mr. Barash is a New York citizen who did not conduct business in Florida, and because the installment contract was not signed in Florida. (Compl. Ex. 1) On May 8, 2006, Judge Alfred J. Horowitz granted plaintiff's motion and dismissed the action with prejudice. (*Id.*)

---

[4] However, a letter from Ford to Mr. Barash dated July 5, 2005, states that Mr. Barash signed a "Florida Simple Interest Vehicle Retail Instalment [sic] Contract" for the vehicle. (Compl. Ex. 13.)

[5] Mr. Barash also asserts that the vehicle "never left the state of Florida," that he "did not take possession of a Lincoln vehicle in the State of Florida," and that the "Lincoln vehicle in question has never been in the State of New York." (Compl. Ex. 2.)

[6] According to a July 5, 2005 letter from Ford to Mr. Barash, the car debt concluded in repossession. (Compl. Exs. 8, 13.)

An outstanding balance of $14,234.59 remained on the installment loan, and Ford sought the funds from Mr. Barash. (Compl. Exs. 8, 13.) Mr. Barash objected to Ford's repeated requests for payments on the outstanding balance, and claimed that the car loan had been fraudulently obtained in his name. (*See id.*)

On August 6, 2005, Mr. Barash drafted a document entitled "Notice of Fraudulent Use of a Credit Report" (hereinafter, "Police Notice"), addressed to the Old Brookville Police Department, in which he claimed that his credit report had been fraudulently used. (Compl. ¶ 8(g), Ex. 3.) In the document, Mr. Barash refers to his credit report and states that the Ford account listed therein was not "opened by, continued by, or authorized by" him.[7] (Compl. Ex. 3.)

Nevertheless, according to Mr. Barash, the defaulted car loan remained on his credit reports issued by Experian and TransUnion, two credit reporting agencies, despite his requests to Ford, Experian and TransUnion to have it removed. (*Id.* ¶ 8(f).) The Ford car loan is not listed on plaintiff's credit report from Equifax, another credit reporting agency. (*Id.* ¶ 8(h), Ex. 12.)

2. The Dell Loan

During May 2004, Dell delivered a personal computer, which had been purchased in Mr. Barash's name, to a Florida address. (Compl. ¶ 9, Ex. 10.) When the computer was purchased, a revolving account was opened with Dell. (Compl. Ex. 10.) The credit limit on the account was $2,000. (*Id.*) According to Mr. Barash, Dell "did not deliver any computer to the Plaintiff." (Compl. ¶ 9.) Mr. Barash stated that "[t]he computer was obtained through the fraudulent use of the Plaintiff's personal credit report." (*Id.*) However, the allegedly improper debt has remained on Mr. Barash's credit reports with TransUnion and Experian. (*Id.*) Mr. Barash also claims that, in addition to reporting the incorrect debt to the credit reporting agencies, Dell also conspired with TransUnion and Experian to add an incorrect Florida address for Mr. Barash to his reports – the same address to which Dell claims that the computer, which Mr. Barash never received, was sent. (*Id.*) The Dell debt has remained on Mr. Barash's TransUnion and Experian credit reports, despite his request that it be removed. (Compl. ¶ 9, Ex. 9.)

II. DISCUSSION

A. Motion for Remand

On December 6, 2006, defendants filed a notice of removal of the instant action from state court pursuant to 28 U.S.C. § 1441, on the basis that the complaint alleges violations of the federal Fair Credit Reporting Act (hereinafter "the FCRA"), 15 U.S.C. §§ 1681 *et seq.*[8] (Notice of Removal ¶¶ 4-5.)

---

[7] It is not clear from the complaint whether this document was sent to Ford.

[8] The Court notes that defendants unanimously consent to removal. *See, e.g., Bill Wolf Petroleum Corp. v. Village of Port Washington North*, No. 07-CV-0517 (ADS) (ARL), 2007 U.S. Dist. LEXIS 39104, at *9 (E.D.N.Y. May 29, 2007) ("'There is general agreement among the courts that all the defendants must join in seeking removal from state court.' . . . In fact 'it is . . . well-settled in this jurisdiction that all defendants must join a removal petition or else the petition is defective and the case must be remanded.'") (quoting *Dunlop v. City of New York*, No. 06-CV-

3

Alternatively, defendants assert that jurisdiction is proper under 28 U.S.C. § 1332, based upon diversity of citizenship between the parties. (*Id.* ¶ 6.)

### 1. Standard of Review

A district court "must remand a case to state court 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction.'" *Vera v. Saks & Co.*, 335 F.3d 109, 113 (2d Cir. 2003) (quoting 28 U.S.C. § 1447(c)). "Generally, a defendant in an action pending in state court may remove that case to federal court only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Citibank, N.A. v. Swiatkoski*, 395 F. Supp. 2d 5, 8 (E.D.N.Y. 2005) (citing 28 U.S.C. § 1441(a)). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 00-CV-1898, MDL 1358 (SAS), M 21-88, 2006 U.S. Dist. LEXIS 20575, at *7 (S.D.N.Y. Apr. 17, 2006) (quoting *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) (quotation omitted)). Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."

---

433 (KMK) (JCF), 2006 U.S. Dist. LEXIS 72315, at *5-*6 (S.D.N.Y. Oct. 3, 2006); *Forum Ins. Co. v. Texarkoma Crude and Gas Co.*, No. 92-CV-8602 (CSH), 1993 U.S. Dist. LEXIS 8463 (S.D.N.Y. Jun. 22, 1993)) (some internal quotation marks and additional citations omitted).

*Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)); *accord Somlyo v. J. Lu-Rob Enter., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006).

### 2. Federal Question

A case may be filed in federal court "'when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Vera*, 335 F.3d at 113 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). A well-pleaded complaint may raise a federal question either by (1) asserting a federal cause of action, or (2) presenting state claims that "'necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.'" *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) (quoting *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). "Ordinarily, a plaintiff is master of his complaint and may elect to proceed solely under state law even if federal remedies are available." *In re "Agent Orange" Prod. Liab. Litig.*, 996 F.2d 1425, 1430 (2d Cir. 1993) (citing *Caterpillar*, 482 U.S. at 392; *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913)), *overruled in part on other grounds by Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). Accordingly, "[a] defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar, Inc.*, 482 U.S. at 398-99.

Moreover, the Second Circuit has acknowledged that, while exceptions to the "well-pleaded complaint rule" exist, such exceptions are narrowly limited, on the basis that "state and federal laws have many overlapping or even identical remedies" and because courts generally "respect a plaintiff's choice between state and federal forums." *Id.* at 1431 (citation omitted).

In this instance, plaintiff's complaint explicitly asserts state law claims under New York Personal Property Law §§ 302, 401-403, 405 and New York General Business Law §§ 380. (Compl. ¶¶ 8(a), 8(e)-(f), 8(i), 9(a), 9(d)-(e), 10(c).) However, in a section of the complaint entitled "Applicable Precedents," plaintiff also refers to 15 U.S.C. § 1681 and cites a number of federal cases construing the statute. (Compl. ¶ 11.) Specifically, the complaint states: "[P]hilosophy behind . . . USC 15 Sect 1681 . . . was protection of the consumer and state law can go further as long as not inconsistent," and "Congress intended to protect unreasonable or careless invasion of consumer privacy." (*Id.* (citing *Credit Data of Ariz. v. Arizona*, 602 F.2d 195 (1979); *In re TRW Inc.*, 460 F. Supp. 1007, 1009 (E.D. Mich. 1978)). Where plaintiff cites federal, non-New York cases, he refers to the "Fair Credit Reporting Act," without specifying whether he means the state or federal statute; in addition, citing one Eighth Circuit case, plaintiff refers to "the Fair Credit Reporting Act, Article 25, Section 380." (*Id.*) The conclusion of this section of the complaint states "[w]herefore additionally based upon the foregoing precedents this action is right and proper and the remedies sought are right and proper."[9] (*Id.*)

---

[9] In plaintiff's motion to remand, he disavows any federal cause of action, stating "[t]here is no reference to any Federal Law in the complaint

Defendants argue that plaintiff's references to "USC 15 Sect. 1681," "Congress" and numerous federal cases indicate that, on the face of the complaint, plaintiff seeks relief under the federal statute. (Dell Br. at 2-3; Ford Br. at 6-7.) However, the Court finds that the *pro se* plaintiff intended for his claims to be grounded in state law. The "Cause of Action" section of his complaint makes no reference to federal law and states, with regard to each defendant, that

---

which is solely situated firmly ensconced in New York State Law." (Pl.'s Mot. for Remand ¶ 2.) According to plaintiff, he was merely referring to federal case law "concerning the matter of violations of the general essence of the State Law violation," and denies that his claims arise out of federal law. (*Id.* ¶ 3.) Defendants contend that this Court may not rely upon plaintiff's subsequent arguments in his motion for remand that a federal question is not presented by his complaint. (Dell Br. at 3; Ford Br. at 7.) Defendants cite *Vera*, in which the Second Circuit held that:

> Although plaintiff now tries to disavow or at least minimize [the federal question] allegation, we generally evaluate a defendant's right to remove a case to federal court at the time the removal notice is filed. It is settled that generally the right of removal is decided by the pleadings, viewed as of the time when the petition for removal is filed.

*Vera*, 335 F.3d at 116 n.2. However, even if this Court declines to consider plaintiff's subsequent explanations for his citation to federal cases, the parties dispute whether the complaint alleges a federal cause of action on its face. Therefore, the Court shall determine, without reference to subsequent filings by plaintiff, whether the complaint, on its face, at the time that defendants' notice of removal was filed, presented a federal question.

the plaintiff seeks damages on the basis of New York State law. (*See* Compl. ¶¶ 8-10.) In fact, the title of the complaint is "Complaint for Damages Pursuant to New York State General Business Law Article 25, Section 380 L (b)(c)." Therefore, the Court cannot find that the mere mention of federal claims or cases converts the instant complaint into a removable action. *See, e.g., Pullen-Walker v. Roosevelt Univ.*, No. 05-C-7053, 2006 U.S. Dist. LEXIS 19596, at *6 (N.D. Ill. Apr. 3, 2006) (holding that, where plaintiff titled her claims as state law actions, "we cannot conclude that Plaintiff inadvertently converted her state law claim into a removable action based on the mention of federal claims"). As "'master of the complaint,'" the plaintiff chose to base his claim in New York law. *Id.* (quoting *Caterpillar, Inc.*, 482 U.S. at 398; citing *Great Northern Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918) ("The plaintiff may by the allegations of his complaint determine the status with respect to removability of a case.")). As the complaint repeatedly and specifically lists the plaintiff's desired causes of action, all of which are pursuant to state law, and only refers specifically to 15 U.S.C. § 1681 in the course of quoting two federal cases that discuss the general purposes underlying such statutes, the Court disagrees with defendants that the complaint, on its face, seeks to assert a federal claim.[10]

Accordingly, the Court declines to find that removal is proper on the basis of federal question jurisdiction.

### 3. Diversity of Citizenship

In order to support removal pursuant to 28 U.S.C. § 1332, the defendant "must demonstrate that the parties are citizens of diverse states and that the amount in

---

[10] Although not raised by either party, to the extent that defendants argue that plaintiff's NYFCRA claims are preempted by the FCRA, that argument does not suffice for purposes of federal removal. First, a state claim may only be removed to federal court on the basis of preemption where "'a federal statute wholly displaces the state-law cause of action through complete pre-emption.'" *City of Rome, N.Y. v. Verizon Communs., Inc.*, 362 F.3d 168, 176 (2d Cir. 2004) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Under 15 U.S.C. § 1681h(e), state claims alleging "malice or willful intent to injure" a customer are not preempted by the federal statute, and such claims are alleged here. Moreover, this Court has held that, "pursuant to § 1681t(b)(1)(F), to the extent plaintiff alleges state law claims based on defendant's failure to act once notified of [credit inaccuracies], those state law claims are preempted by the FCRA," while claims premised upon defendants' acts *prior* to notification are not. *Prakash v. Homecomings Fin.*, No. 05-CV-2895 (JFB) (VVP), 2006 U.S. Dist. LEXIS 62911, at *17-*23 (E.D.N.Y. Sept. 5, 2006) (discussing FCRA preemption) (citing *Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 U.S. Dist. LEXIS 17052, at *17-*24 (E.D.N.Y. May 16, 2005) (applying temporal approach to FCRA preemption)); *see also Gross v. Washington Mutual*, No. 06-CV-4340 (RLC), 2007 WL 1404435, at *4 (S.D.N.Y. May 10, 2007). In this instance, it appears that plaintiff alleges improper acts by defendants both before and after he notified them of his concerns about inaccurate credit reporting. Second, to the extent that defendants may assert federal preemption as a defense to plaintiff's claims, "it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption . . . [a defendant] cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar, Inc.*, 482 U.S. at 399.

6

controversy exceeds $ 75,000." *Cazaubon v. Korean Airlines Co.*, No. 07-CV-2197 (NGG) (JO), 2007 U.S. Dist. LEXIS 40080, at *3 (E.D.N.Y. Jun. 1, 2007) (citing 28 U.S.C. § 1332(a) and *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006) ("It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction.")); *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) ("A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount.") (citing *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). The parties do not dispute that there is complete diversity of citizenship between the plaintiff, a citizen of New York State, and the defendants.

However, the parties dispute whether the requisite $75,000 minimum amount in controversy has been reached in this case. Plaintiff's complaint seeks punitive damages in the amount of $100,000 against each of the four defendants. (Compl. ¶¶ 8(i), 9(f), 10(d).) Plaintiff also seeks attorney's fees and costs, and does not seek compensatory damages.[11]

Plaintiff also states that "this cumulative action is for the recovery of $400,000 in total from the four Defendants as provided under New York Statute." (*Id.* ¶ 13.) While defendants argue that plaintiff's complaint therefore satisfies the amount in controversy requirement because it seeks relief in an amount greater than the jurisdictional minimum, plaintiff contends that "the suggestion . . . that a $100,000 fine to each defendant for its violation of State Statute, is an arbitrary amount based upon the Plaintiff's assessment of what sum would prevent such acts in the future by each Defendant." (Pl.'s Br. ¶ 8.)

In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938), the Supreme Court held that:

> The rule governing dismissal for want of jurisdiction in cases brought in federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

Therefore, the plaintiff's good faith demand, as set forth on the face of the complaint, determines whether the claim meets the jurisdictional minimum amount in controversy. *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) ("We recognize 'a

---

[11] Although plaintiff requests attorney's fees, as a *pro se* plaintiff, he is not entitled to such fees as a matter of law. *Kay v. Ehrler*, 499 U.S. 432, 435-38 (1991) (declining to award attorney's fees where *pro se* litigant was himself a lawyer and holding that "[a] rule that authorizes awards of counsel fees to *pro se* litigants . . . would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every case"); *see also SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994) (declining to award attorney's fees to *pro se* litigant); *Lozano v. Peace*, No. 05-CV-0174 (SJF) (ETB), 2005 U.S. Dist. LEXIS 40360 (E.D.N.Y. Jul. 11, 2005) (same). The Court, therefore, shall not consider such fees in determining whether the relief sought satisfies the jurisdictional amount.

rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'") (quoting *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999)). In order to overcome "the face-of-the-complaint presumption, the party opposing jurisdiction must show 'to a legal certainty' that the amount recoverable does not meet the jurisdictional threshold." *Id.*; *St. Paul Mercury Indem. Co.*, 303 U.S. at 288-89 ("[I]f from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed."). Where, as here, a plaintiff seeks punitive damages, such damages "must be considered to the extent claimed in determining jurisdictional amount." *Bell v. Preferred Life Ass. Soc'y*, 320 U.S. 238, 240 (1943); *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir. 1991) ("[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied.") (citation omitted). However, "[w]hen punitive damages are used to satisfy the amount in controversy requirement, the trial judge is accorded greater discretion than for a claim of actual damages, and special judicial scrutiny is triggered." *O'Conner v. Sears Holding Corp.*, No. 05-CV-5708 (DGT) (LB), 2006 U.S. Dist. LEXIS 60109, at *7 (E.D.N.Y. Aug. 14, 2006) (citing *Zahn v. Int'l Paper Co.*, 469 F.2d 1033, 1034 n.1 (2d Cir. 1972), *aff'd*, 414 U.S. 9253 (1973), *superseded by statute*, 28 U.S.C. § 1367, *as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 571 (2005)); *Miller v. European Am. Bank*, 921 F. Supp. 1162, 1167 (S.D.N.Y. 1996)). As set forth below, in this instance, the Court finds that plaintiff cannot demonstrate with "legal certainty" that his punitive damages claims will not exceed $75,000.

While this Court must look to New York State law in determining whether the plaintiff could conceivably obtain punitive damages in an amount that exceeds the jurisdictional minimum, *see, e.g, O'Conner*, 2006 U.S. Dist. LEXIS 60109, at *7-*8 ("Under diversity jurisdiction, the law of the forum state is applied. As such, we look to state law to determine whether punitive damages in this amount are appropriate.") (citing *Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994)), because the FCRA and the NYFCRA are interpreted similarly and there is no case law specifically applying the state statute in comparable circumstances, the Court shall also consider analysis of the FCRA in reaching its conclusions as to plaintiff's claims under the NYFCRA in this case. *Ali v. Vikar Mgt. Ltd.*, 994 F. Supp. 492, 498 (S.D.N.Y. 1998) (citing *Scott v. Real Estate Finance Group*, 956 F. Supp. 375, 384 (E.D.N.Y. 1997), *aff'd in part and rev'd in part on other grounds*, 183 F.3d 97 (2d Cir. 1999)). Under New York State law, punitive damages are available for "willful" violations of the NYFCRA:

> Any person, firm, partnership, corporation or association whose knowing and willful violation of section three hundred eighty-s of this article resulted in the transmission or provision to a consumer reporting agency of information that would otherwise not have been transmitted or provided, and any consumer reporting agency or user of information who or which willfully and knowingly fails to

8

comply with any requirement imposed under this article with respect to any consumer is liable to that consumer in an amount equal to the sum of:

(a) Any actual damages sustained by the consumer as a result of such failure or as a result of a violation of section three hundred eighty-s of this article;

(b) Such amount of punitive damages as the court may allow;

(c) In the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

N.Y. Gen Bus. Law § 380-*l*. Moreover, such damages are available even where a plaintiff has sustained no actual damages. *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 476 (2d Cir. 1995) (citing 15 U.S.C. § 1681n(2); *Boothe v. TRW Credit Data*, 557 F. Supp. 66, 71-72 (S.D.N.Y. 1982)). In construing "willful" noncompliance with regard to the FCRA, the Supreme Court has held that "both knowing and reckless disregard of the law" can create liability for punitive damages. *Safeco Ins. Co. of Am. v. Burr*, Nos. 06-84, 06-100, 127 S. Ct. 2201, 2007 U.S. LEXIS 6963, at *24 (Jun. 4, 2007).

In the instant case, plaintiff alleges both knowing and willful conduct by defendants in refusing to alter his credit reports or to cease collection activities after receiving repeated complaints from him that he had not incurred the debts listed; therefore, relief in the form of punitive damages may be available, should plaintiff's claims be found meritorious. Neither party has cited cases indicating the potential amount of plaintiff's recovery. Plaintiff, seeking remand, argues that his request for $100,000 against each defendant was merely "arbitrary," and appears to suggest that his actual expectations fall below the $75,000 threshold. (Pl.'s Br., at ¶ 9.) However, where a plaintiff has filed a complaint in state court asserting a claim for relief in excess of the minimum federal amount in controversy, he may not later, after removal, amend his complaint or stipulate that he will seek relief in a lesser amount in order to obtain remand to state court. It is well-settled that, even if a plaintiff, "after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction." *St. Paul Mercury Indem. Co.*, 303 U.S. at 292; *Purple Passion, Inc. v. RCN Telecom Servs.*, 406 F. Supp. 2d 245, 246-47 (S.D.N.Y. 2005) ("'Once a case that has been initiated in state court has been removed properly, subsequent events that reduce the amount recoverable, such as the plaintiff's amendment of the complaint, will not defeat the federal court's subject matter jurisdiction.'") (quoting 14C Charles Alan Wright et al., *Federal Practice and Procedure* § 3725, at 115 (3d ed. 1998)) (collecting cases). Therefore, plaintiff's proposed reduction of his original punitive damages claim to an amount below the jurisdictional threshold, in connection with the motion for remand, does not thwart federal diversity jurisdiction, because punitive damages in excess of $75,000 could possibly be awarded, for the reasons set forth below.

Under these circumstances, some courts have relied upon evidence put forward by the removing party of past jury verdicts involving analogous facts in order to determine the amount of punitive damages that the plaintiff would likely recover. *See, e.g., Cable v. Merit*

9

*Life Ins. Co.*, No. 06-CV-0804 (GEB) (KJM), 2006 U.S. Dist. LEXIS 51084, at *6 (E.D. Cal. Jul. 14, 2006). Based upon a review of analogous cases, as well as of the plaintiff's claims, the Court cannot find to "a legal certainty" that punitive damages, if awarded in the instant case, would be $75,000 or less. For instance, in *Saunders v. Equifax Info Servs., LLC*, 469, F. Supp. 2d 343 (E.D. Va. 2007), a jury awarded $80,000 in punitive damages where a plaintiff filed an FCRA action concerning the reporting of derogatory information about a car loan to credit reporting agencies against the issuer of the loan and the agencies. In another case where a plaintiff filed an FCRA claim on the basis that false information was listed on her insurance claims report, a jury awarded $197,000 for mental distress (which was later reduced by the court to $100,000) and $250,000 in punitive damages, even though the plaintiff claimed no compensatory damages for out-of-pocket losses. *Boris v. Choicepoint Servs.*, 249 F. Supp. 2d 851 (W.D. Ky.), *amended by* 2003 WL 23009851 (W.D. Ky. 2003). Therefore, the Court concludes that plaintiff has not overcome the "face-of-the-complaint presumption," *Scherer*, 347 F.3d at 397, by demonstrating to a legal certainty that punitive damages in excess of $75,000 could not be awarded in this case. Accordingly, the requirements for federal diversity jurisdiction have been met in the instant case.

### B. Motion for Rule 11 Sanctions

Plaintiff also moves, pursuant to Federal Rule of Civil Procedure 11, for sanctions against defendants' attorneys for improperly removing his case from state court to federal court, and for allegedly making false statements regarding plaintiff in the notice of removal. For the reasons set forth below, plaintiff's motion for Rule 11 sanctions is denied.

First, the Court notes that plaintiff has not satisfied the procedural requirements for filing the instant motion. A request for sanctions must be made by separate motion, Fed. R. Civ. P. 11(c)(1)(A), "and failure to do so is a ground for denial of sanctions." *Daniel v. Safir*, 135 F. Supp. 2d 367, 378 (E.D.N.Y. 2001) (quoting *Lambertson v. Kerry Ingredients, Inc.*, 50 F. Supp. 2d 163, 170 (E.D.N.Y. 1999)). In addition, a motion for sanctions under Rule 11 must describe the "specific conduct alleged to violate" the rule. Fed. R. Civ. P. 11(c)(1)(A). Finally, the motion must be served on the subject of the motion, "but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn." Fed. R. Civ. P. 11(c)(1)(A); *see Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 389 (2d Cir. 2003). Here, plaintiff has not fulfilled the requirement that he serve his Rule 11 motion on defendants and then present it to the Court twenty-one (21) days after defendants' failure to withdraw the challenged motion upon receipt of the Rule 11 notice, and therefore, the motion is procedurally deficient. *See, e.g., Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1328 (2d Cir. 1995) (holding a district court's imposition of sanctions to be an abuse of discretion where the party seeking sanctions did not provide opposing party with 21-day "safe-harbor" period to correct his misstatements before filing Rule 11 motion); *Vermande v. Hyundai Motor Am., Inc.*, 352 F. Supp. 2d 195, 204 (D. Conn. 2004) (denying motion for Rule 11 sanctions where party failed to comply with procedural requirements).

Moreover, even assuming *arguendo* that plaintiff had followed the proper procedure, the Court finds that plaintiff's accusations against defendants are without merit. In considering whether to award sanctions under Rule 11, a court must determine whether the contested motion is objectively unreasonable. *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir. 2000) (quoting *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000)); *see also MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1257-58 (2d Cir. 1996). In this case, where defendants' removal of the instant action was properly initiated, and was substantiated by federal law, the Court declines to find such removal objectively unreasonable.[12] As explained in the Court's discussion of plaintiff's motion for remand, *supra*, this Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1332; therefore, defendants' removal of this action to federal court is "well-grounded in fact, legally tenable, and not interposed for any improper purpose." *Gal v. Viacom Intern., Inc.*, 403 F. Supp.2d 294, 307 (S.D.N.Y. 2005) (quoting *Cooter & Gell*, 496 U.S. at 393) (internal quotation marks omitted). In reaching this conclusion, the Court also rejects plaintiff's argument that defendants' pleadings "constitute[] a fraud upon the Court." (Pl.'s Br., at ¶¶ 1-9). While plaintiff argues that defendants have attempted to defraud the Court by representing that federal jurisdiction is appropriate in this case, there is no indication that defendants have falsely represented the facts or the law relating to removal of the instant action. Furthermore, plaintiff's assertion that "the removal to Federal Court is for the sole purpose of harassment, to cause unnecessary delay and needless increase in the cost of litigation" is unfounded and without any support whatsoever in the record.[13] (Pl.'s Rule 11 Mot. ¶ 2.) Accordingly, defendants are not subject to Rule 11 sanctions, and plaintiff's motion is denied.

### C. Motion for Attorney's Fees

Notwithstanding his *pro se* status, plaintiff seeks attorney's fees pursuant to 28 U.S.C. § 1447(c), which provides that "an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). As this Court has denied plaintiff's motion for remand, his accompanying motion for attorney fees pursuant to the removal statute is likewise

---

[12] Although the Court agreed with plaintiff that he did not assert a federal cause of action in his complaint, and thus denied jurisdiction over the instant case pursuant to 28 U.S.C. § 1441, the Court finds that defendants' assertion of federal question jurisdiction was not "so untenable as a matter of law as to necessitate sanction. Nor did [it] constitute the type of abuse of the adversary system that Rule 11 was designed to guard against." *Salovaara*, 222 F.3d at 34 (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)); *see also Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990) ("A distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable."), *abrogated by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990), *as recognized in Mareno*, 910 F.3 at 1047.

[13] Plaintiff's assertion that defendants "concede" that "remand will no doubt take place" is incorrect. (Pl.'s Rule 11 Mot. ¶ 2.) Although defendants state in the notice of removal that they do not waive their right to assert a defense of improper service should the matter be remanded to New York State court (Notice of Removal, at 1 n.1), this statement is in no way an admission that Experian's removal of the action was futile.

denied.[14]

IV. CONCLUSION

For the foregoing reasons, plaintiff's motion is denied in its entirety.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 20, 2007
Central Islip, New York

\* \* \*

The plaintiff is proceeding *pro se*. The attorney for defendant Ford is David Larry Tillem, Esq., Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, 3 Gannett Drive, White Plains, New York 10604. The attorney for defendant Dell is Bryan F. Lewis, Esq., Nixon Peabody LLP, 50 Jericho Quadrangle, Suite 300, Jericho, New York 11753. The attorney for defendant Experian is Catherine Mary Ferrara-Depp, Esq., Jones Day, 222 East 41st Street, New York, New York 10017-6702. The attorney for defendant TransUnion is Timothy P. Creech, Esq., Kogan, Trichon & Wertheimer, P.C., 1818 Market St., 30th Floor, Philadelphia, Pennsylvania 19103.

---

[14] Moreover, such fees are not available where, as here, the party seeking attorney's fees is proceeding *pro se*. *See supra*, n. 12.